# WILLIAM WALLACE

*v.*

# WILLIAM O. CARPENTER *et al.*

1. STATUTE OF FRAUDS—*contribution for money advanced to purchase land.* Where two or more persons purchase land, agreeing to take the title in the name of one of them, who agrees to advance the first payment, if the title should fail the others will be liable to him for contribution, and the Statute of Frauds can not be interposed as a defense.

2. RESULTING TRUST—*Statute of Frauds.* Where four persons agree to purchase land on a speculation, and for convenience in selling the contract is taken in the name of one, who by agreement with the others furnishes the first payment, and he afterwards disposes of the land for a profit, a resulting trust will arise by operation of law in favor of the others in the profits so realized, and may be enforced in equity although there is no written evidence to show the respective rights of the parties.

3. SAME—*fraud.* Where four persons, by a verbal agreement as between themselves, bought a tract of land for speculation, and had the contract of purchase taken in the name of one to enable him to sell when he could realize a profit, which he did, and he and two of the others, by agreement, concealed the fact from the fourth, and informed him that the purchase had fallen through by reason of a defect in the title, and the two agreed with the party holding the contract to pay him one-third of the profits for selling, it was *held*, that owing to the fraud practiced on the fourth party, the one selling could claim no benefit growing out of the fraudulent agreement in which he participated, and the fourth party thus sought to be defrauded was entitled to one-fourth the profits arising from the sale.

APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Mr. I. N. STILES, and Mr. FARLIN Q. BALL, for the appellant.

Messrs. GRANT & SWIFT, for the appellees.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

In the latter part of January, 1868, Wallace, Wm. Carpenter, Augustus A. Carpenter and Hall, finding an 80-acre tract of land lying in or near Chicago, for sale at $90 per acre, agreed with each other to buy the same on speculation—each

to pay one-quarter of the expenses of the purchase, and each to have one-quarter of the land, or the proceeds of the sale thereof, and that, for convenience in case of sale, the contract of purchase and deed should be made in the name of Wm. O. Carpenter.

The contract of purchase was made in the name of Wm. O. Carpenter. One-third of the price was to be paid and the deed made as soon as the vendor should produce an abstract showing title, and the remaining part of the purchase money was to be paid in two equal annual instalments. It was supposed it would require some three or four weeks to prepare the abstract and title papers, and $250 of the first payment was advanced as earnest money. Wm. O. Carpenter furnished this earnest money, and advanced it *in behalf* of *himself* and *the other parties*, respectively, interested in the purchase.

Wallace lived in Ohio, and went home to provide money for his share of the first payment. There is some dispute as to the time in which he was to furnish this money. Wallace says that Carpenter agreed to advance this money for him, and he was to refund it in two months. Hall's recollection is, that he was to refund it in three months, and the Carpenters both testify that it was to be forwarded in 18 days; but in the view we take of the case, this is an immaterial question. Assuming the view of the Carpenters to be correct, it, at most, left Wallace under promise to advance one-quarter of the money from time to time necessary to fulfill the contract of purchase.

On the 13th of February, 1868, a sale of their interest in this property was effected, at an advance of $4800, to Ford and Keisler, the purchasers to assume and pay all the payments upon the purchase of the parties to this suit, and $1000 of this profit was. paid, as earnest money, into the hands of Wm. O. Carpenter. At this time, the abstract and title papers, in execution of the original purchase, had not been prepared. Soon after this, the abstract was completed, and the land passed from the hands of Wm. O. Carpenter to the second purchasers, at a profit of $4800, the first purchasers

being relieved of all their payments and having refunded the
$250 of earnest money paid at the beginning of these transac-
tions.

After the contract of sale to Ford and Keisler, and the
receipt of the $1000 of earnest money on the contract, but
before the transfer was entirely completed, Wm. O. Carpenter,
with the consent of Augustus, his brother, wrote a letter to
Wallace, telling him there was an incurable defect in the title,
and that the trade had either fallen through or would fall
through, and that he need not send his $600, or that it was
well he had not sent it. (There is some dispute about the true
version of this letter, but it is wholly immaterial which of the
alternatives above was its true tenor.)

Wallace was never in default, in any view of the case. He
was in no default to the Carpenters in refunding to them
money which they expected to advance, for they advanced no
money and had no claims upon him giving them a right to
demand to have money refunded to them. He was in no
default to the original vendor, for all payments to him were
promptly met out of the proceeds of the Turner sale, and one-
fourth of these proceeds, in equity, belonged to Wallace. He
was guilty of no default whatever. Wallace, being thus mis-
led, rested in ignorance of the true state of affairs until in July,
1870, and supposed that the purchase had never been consum-
mated, and this although he visited the Carpenters in April,
1868, and afterwards removed to Chicago, where he saw them
frequently and had other business transactions with them.

The fruits of this speculation ($4800) was, early in 1868,
paid to Wm. O. Carpenter, and divided equally between Hall,
Wm. Carpenter and Augustus Carpenter, each taking $1600.

After the discovery of this fraud, Wallace filed his bill in
chancery, claiming relief. The application was resisted below
by the Carpenters, upon the ground that the contract between
the parties was void under the Statute of Frauds, and the
court below so held, and, on the hearing, dismissed the bill,
and complainant appeals.

In this we think the court erred. The $250 of earnest money was paid by Wm. O. Carpenter in behalf of himself and each of the other parties—that is, he advanced for each of them, at his request, $62.50, and for his use; and if it had turned out that the original vendor had no title, and he had failed to refund this earnest money, William could have compelled contribution by each of the others of $62.50, and in a proceeding for that purpose the Statute of Frauds could not have been interposed. In contemplation of law, one-quarter of that earnest money was the money of Wallace, the complainant, for he at once became liable to pay that amount to Wm. O. Carpenter. A resulting trust in his favor grew, by operation of law, out of the transaction, which entitled him to one-quarter of all the benefits growing out of that payment. The benefits which did grow out of that payment were the profits of $4800.

In the arrangement for the last sale, the Carpenters agreed to allow a compensation to Hall for finding the second purchasers. In consideration of his services in that regard, the Carpenters agreed to allow him one-third, instead of one-quarter, of these profits, and promised that they would take care of Wallace. Hall swears that, either then or afterwards, he, at the request of the Carpenters, promised to keep the matter a secret from Wallace. Afterwards, he was advised of the fraudulent letter written to Wallace. If this contract to allow Hall a compensation for finding a purchaser had been made in good faith by Wm. O. Carpenter, Wallace might have been bound by it. The fair inference, from his conduct in allowing the title to be taken in the name of Wm. O. Carpenter, is, that Carpenter was to exercise a discretion as to the sale of the property, and complainant could not claim a part of the proceeds of the sale without ratifying the acts of Wm. O. Carpenter, done in good faith, in accomplishing the result; and this arrangement with Hall, according to Hall's testimony, was a part of the transaction of the last sale, and, in fact, the foundation of it. Augustus Carpenter swears that the arrangement to give Hall one-third, instead of one-fourth, of the

profits, was not made until after the letter was written to Wallace. Wm. O. Carpenter also testifies that the final arrangement to let Hall have one-third, was after the false letter was written to Wallace, and that, at that time, Hall promised secrecy toward Wallace.

Under all the circumstances, we think that Hall can not be regarded as free from participation in this fraud. It is a fact that the arrangement to give him one-third of the profits was based, in part, upon his promise to keep secret the fraud being practiced upon Wallace. Hall can claim nothing by such an agreement.

Under the circumstances, Wallace is entitled to a decree against all the defendants for one-quarter of the profits made out of the transaction, with interest upon each instalment received by the defendants, from the time received.

The decree is reversed, and the suit remanded with direction to enter a decree as here stated, and to state an account so as to ascertain the exact amount due to Wallace upon this rule, and thus grant him relief.

*Decree reversed.*

Mr. JUSTICE SCOTT dissenting.