## JOHN ALLISON
### v.
## J. N. PERRY ET AL.

*Partnership to Deal in Coal Lands—Dissolution—Bill for Accounting —Statute of Frauds—Evidence.*

1.  Upon a bill filed by a partner against his co-partners for an accounting and for other relief, it is *held:* That the contention of the complainant that the defendants had agreed that certain lands controlled by him should be taken in as part of the assets of the firm which was formed for the purpose of dealing in coal lands, is unsupported by the evidence.

2.  A parol contract of partnership to deal in lands, is not within the statute of frauds.

[Opinion filed December 8, 1888.]

APPEAL from the Circuit Court of Ogle County; the Hon. WILLIAM BROWN, Judge, presiding.

On February 26, 1885, John Allison filed in the Circuit Court of Ogle County his bill of complaint against I. N. Perry and M. D. Hathaway, setting forth, amongst other things, in substance, the purchase of what was known as the O. J. Booth lands, in partnership between said John Allison, I. N. Perry and M. D. Hathaway, in equal one-third shares; and also charging that said Perry then promised to take into the partnership what were then known as the Royal lands, at $55 per acre, or as much thereof as said Allison might be able to perfect title to, which, the bill says, was estimated at somewhat over one hundred acres; charging, also, the making and renewing to Perry and Hathaway of his notes for a portion of his share of the purchase price of the Booth lands; that he, Allison, had taken title to the Royal lands in the name of his son, W. S. Allison; and that since February 28, 1883, he has been ready, willing and able to convey said Royal lands, and that Perry and Hathaway refuse to accept the same.

The bill prays an accounting between the parties; that Perry and Hathaway pay to him what may be found due him from them, or either of them; and that said notes be canceled and given up, and for general relief.

April 22, 1885, Perry and Hathaway filed their answer to said bill, admitting and averring the partnership in the purchase of the O. J. Booth land; and also averring the purchase for the partnership of about three and one-half acres of land known as the Waters land; but denying that defendants ever, at any time, promised or agreed to purchase or take into the partnership the Royal lands, so called, or any part of the same; and also stating and charging the partnership dealings between the parties, and averring the making of his notes by said John Allison for his one-third of the first and second payments on the Booth contract, and the making of new notes for the principal and interest of the notes so made upon said payments, on or about January 8 or 9, 1883; one of said notes for $5,000, at six months, dated January 8, 1883, with interest at seven per cent, the other for $301.31, at one day, dated January 9, 1883, with interest at seven per cent., and the non-payment thereof.

April 22, 1885, at the time of filing their answer, said Perry and Hathaway filed in said cause their cross-bill against said John Allison, therein charging the general dealings of the partnership and the property and assets by it owned, and praying for a full accounting of all partnership advances, receipts and expenses, and that the partnership might be dissolved, its property and assets sold, and the proceeds applied to the payment of liabilities and adjustment of accounts between the copartners.

On May 7, 1885, John Allison filed his answer to the cross-bill, denying that any such agreement was made on or about February 14, 1882, as set up in the cross-bill, and denying that any copartnership was made except as stated and set forth in his original bill, and denying that the Booth contract was assigned to, and deed of the land therein described taken in the name of, I. N. Perry at his request; and admitting that said notes were unpaid, for the reason alleged in his original bill.

Pursuant to notice, on August 7, 1886, John Allison filed an amendment to his answer to the cross-bill, claiming the benefit and protection of the statute of frauds and perjuries against claims set up in the cross-bill.

On December 9, 1885, Perry and Hathaway amended their answer to the original bill, claiming the benefit and protection of the statute of frauds and perjuries against the claim or alleged agreement of the copartnership to take any other lands than the O. J. Booth and Waters lands.

Replications were filed to the respective answers, and the cause, by agreement of parties, referred to the master in chancery of said Ogle county, requiring him to take proofs and state an account between the parties.

A very large mass of testimony was submitted to the master, and on January 11, 1887, he made and filed in said court his report, finding that the partnership only embraced the O. J. Booth and Waters lands, and stating an account between the parties up to December 6, 1886.

Exceptions to the master's report were filed before him by the complainant and by the respective defendants, which were overruled by the master and the exceptions renewed before the court.

Upon the hearing before the court the exceptions of the respective parties were overruled, and the master's report as made, confirmed, and the decree appealed from, entered.

Messrs. S. C. Stough and J. C. Seyster, for appellant.

Messrs. William Lathrop and M. D. Hathaway, for appellees.

Lacey, P. J.    The main, and perhaps the only question in this case as raised by the pleadings or controverted by the parties, is whether, at the formation of the partnership, the so-called Royal lands of Mr. Allison, or any part thereof, were to be taken in as a part of the assets of the firm, or whether any valid agreement was made to take them in or to form a partnership without taking them in.    The evidence taken before

the master and preserved in the record is quite voluminous and much of it irrelevant, and we have examined it with the care which the importance of the case deserves, and have arrived at the conclusion that the appellant has failed to make out his claim. We shall not take the trouble to go over the evidence in detail, as it would consume much time and is unnecessary. The agreement which appellant Allison claims, by which his Royal lands of one hundred acres were to be taken into the firm at fifty-five dollars per acre, was entered into and consummated about February 14, 1882, and was negotiated between him and appellee Perry, the latter, as appellant claims, acting in behalf of Hathaway and himself.

We think, aside from the other evidence in the case, that appellant's own letters negative any such understanding as is claimed by him to take into the partnership the Royal lands.

In his first letter addressed to appellee Perry, dated Gardner, January 9, 1883, nearly one year after the formation of the partnership, in which letter was inclosed his renewal notes for his interest in the firm, he says: "I hope you and Mr. Hathaway will take in our Royal land, and if you will it will help me out, and I am sure it is as good coal land as any of it, and, as well as some small pieces of the Royal lands, is surrounded by the Booth land, and is clear enough and will not lessen the value of the Booth land; then if you could fix it so I could only own one-fourth or one-sixth, I could get along with it. Please consider this."

Then again, May 30, 1883, in another letter directed to appellees, he says: "Gents: I wish you would do one of two things for me—either take my Royal lands or let me out as a partner with you on the Booth land. I am not in shape to pay any part unless you take in my land, and to pay interest will only make it worse for me; if there was no coal there I should not have asked you men to do either; think of this and let me know."

This is not the language of a man who already had an existing contract with appellees to take in this land, made a year before. If such a contract existed he would have demanded its fulfillment instead of asking that the land be taken in as a matter of favor. The disclosure made by these letters entirely

harmonizes with the evidence of appellees and contradicts his own testimony. The explanation given by Allison of the writing of the letters, that he did it at the instance of Perry to induce Hathaway to take in the lands, is not satisfactory.

The fact that the title of the lands of the firm were held by appellant in his own name, does not render the partnership agreement, which was in parol, obnoxious to the statute of frauds. Wallace v. Carpenter, 85 Ill. 590; Chester et al. v. Dickinson, 54 N. Y. 1; Yoak v. Clemens, 41 Ia. 95. Although an optional contract for the purchase of the partnership lands was made prior to the formation of the partnership, yet the title was acquired after such formation and for the benefit of the firm. The land was paid for on account of the firm.

The objection to the improper introduction of evidence on part of appellees is not of any force. It matters not what illegal evidence is introduced on a trial in equity. The court will consider only such as is competent, and we find abundance of evidence aside from the portion objected to, to support the decree.

The master, in allowing Allison seven per cent. interest on the sums paid out by him, did not err. This was correctly found from the bill and answer. The allowance to Hathaway of $81.38 and to Perry $96.75 for personal expenses for attention to business of the firm is not erroneous. The allowance is justified by the evidence.

The claim is set up in appellant's reply brief that there was no partnership by the pleadings and evidence. We are satisfied that the partnership embraced the Booth and Waters lands alone.

The point made by appellant, that the decree does not provide for the collection of the notes for rent, one note for $500 due October 1, 1885, and one for $500 January 1, 1886, as firm assets, is not well taken. It does so provide. Rent was only reported by the master as collected to December 1, 1886. The above notes were not then collected. The decree plainly, in its findings and directions, mentions and provides for such collection for the benefit of the firm. It was not error to exclude the personal account of Perry and appellant for the accounting. The decree is therefore affirmed.

*Decree affirmed.*