### IN THE

# SUPREME COURT OF ILLINOIS.

:130    9
62a 221

130    9
79a 143
79a 676

130    9
180    83

## JOHN ALLISON

### v.

## I. N. PERRY et al.

*Filed at Ottawa October 31, 1889.*

1. CHANCERY—*consideration of testimony—presumption.* Although the record of a chancery suit may contain much testimony that is irrelevant, it will be presumed, in the absence of anything showing the contrary, that the master and the chancellor acted only upon such as was properly admissible.

2. SAME—*evidence—on exception to master's report.* A second deposition of a party, taken after the filing of the master's report, is not competent evidence on the hearing of exceptions to such report.

3. SAME—*production of documents—after examination before master —notice.* Some months after the examination of one of the parties before the master, the other party moved the court to require the party so examined to produce certain letters, based on affidavit of materiality and want of copies: *Held,* that the motion was properly overruled. If the letters were admissible, notice should have been given to produce the same, and upon refusal to do so, secondary evidence of their contents would have been admissible.

4. PARTNERSHIP IN LANDS—*Statute of Frauds—relations between the partners.* The law does not require that the agreement of co-partnership shall be in writing, to enable the firm to purchase lands. Where the partnership is formed under a parol agreement, it may be shown that its property consists of land.

5. Partners may buy lands for the joint account of all, but the legal title need not be made to all. By consent, the title to land bought by the firm may be conveyed in trust, to one of the partners, and the partners not invested with the legal title can not, under the Statute of Frauds, defeat a note given by them to the other partner for their share of the price advanced for them.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Ogle county; the Hon. WILLIAM BROWN, Judge, presiding.

John Allison filed his bill against I. N. Perry and M. D. Hathaway, setting forth, among other things, the purchase of about six hundred acres of land, known as the "O. J. Booth land," by the three parties to the suit, in equal shares, and as partners, and charging that Perry promised the complainant to take into the partnership, as assets, the "Royal lands," (about one hundred and ten acres belonging to him, Allison,) at $55 per acre, or as much of said land as Allison might be able to perfect the title to, which was estimated at something over one hundred acres; that the title to the Booth land was taken in the name of Perry and Hathaway, who advanced all the purchase money paid; that complainant gave his notes to Perry and Hathaway for his one-third of the purchase money, which were afterwards renewed January 8, 1883, the aggregate amount then being $5301.31, and bearing seven per cent interest; that he had taken title to the Royal land in the name of his son, W. S. Allison, and that ever since February 28, 1883, he has been ready and willing and able to convey said Royal land, and that Perry and Hathaway refused to accept said lands and give him credit therefor, and prayed for an accounting, and for a decree that the defendants pay him what is found to be due him from them or either of them, that said notes be cancelled and delivered up, and for general relief.

The defendants filed their answer, admitting and averring the partnership and the purchase of the Booth land; averring the purchase for the partnership of the "Waters tract," of three

and one-half acres, in addition to the Booth land, but denying that the defendants at any time promised or agreed that the partnership should purchase, or that they would take into the co-partnership, the Royal land, or any part thereof, as partnership assets; averred the making of the notes by Allison for his one-third of the first and second payments on the Booth contract, and the making of the new notes for the principal and interest on renewal of the old notes, one of said notes being for $5000, at six months, and the other for $301.31, at one day, both bearing seven per cent interest.

At the time of filing their answer, the defendants filed their cross-bill against Allison, setting up the general dealing of the partnership, the property and assets by it owned, and praying for a dissolution of the partnership, the sale of its assets, and adjustment of partnership accounts. Each of the bills was amended by setting up the Statute of Frauds. Replications were filed, and the cause referred, by agreement, to the master, to take proofs and state the account. The master filed his report January 11, 1887, finding that the partnership embraced only the Booth and Waters lands, and stating an account between the parties to December 6, 1886. Each of the parties filed exceptions to the report, which the court overruled.

Allison excepted to the report, first, because it did not find that he was to have eight per cent on $500 paid to one Thayer for an option to purchase certain lands for the partnership, and on moneys advanced for expenses in testing lands, etc., instead of seven per cent; second, because it stated that Perry did not agree with Allison to take any of the Royal lands, when it should, from the evidence, have found that he did so agree; third, and that part of the report wherein it is stated that "Allison finally accepted the proposal to form a partnership, as made by Perry to him, under the authority given him by Hathaway;" fourth, and to that part of the report that finds "the partnership at that time included nothing but the O. J. Booth land and the expenses incurred on account of the

same; fifth, and also excepted to the allowance of $81.28 personal expenses paid by Hathaway, and of $96.75 personal expenses paid by Perry; sixth, because the report found that Allison agreed to take a one-third interest of the Booth farm, and failed to find that such agreement, if made, was void, under the Statute of Frauds, for want of any memorandum thereof in writing; and seventh, because the master allowed Allison no interest on the item of $400 for his services, allowed by the master. At the hearing he was allowed to file further exceptions, that the master had not properly charged Perry and Hathaway with certain notes in their hands at the time of filing said report.

The court overruled each and all of said exceptions, and found that on December 6, 1886, there was due to the defendants from Allison, on account of advances in the purchase of co-partnership lands, and expenditures in the course of the partnership business, $5526.28, payable to Perry, and that there was due from Allison to Hathaway $6105.01, and allowed interest on said sum to the date of the decree, making the amount due from Allison to Perry $5891.87, and to Hathaway $6497.69. The court decreed a dissolution of the firm and sale of partnership assets, and directed the master to take an account of the rents and profits since December 6, 1886, and report the same with his report of sale. The decree also found there was, December 6, 1886, due from Perry to Allison, on account of the business between them prior to the formation of the partnership, and disconnected therefrom, the sum of $452.57, which, at the date of the decree, amounted to $481.61; ordered the same to be set off and deducted, leaving the balance due Perry $5410.57, and ordered the same paid out of the proceeds of Allison's share in the partnership property. Allison appealed to the Appellate Court for the Second District, where the decree was affirmed, and he prosecutes this further appeal. Other facts necessary to the understanding of the case are stated in the opinion.

Mr. S. C. STOUGH, and Mr. J. C. SEYSTER, for the appellant.

Mr. WILLIAM LATHROP, and Mr. M. D. HATHAWAY, for the appellees.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

The principal question presented by this record is one of fact. We shall not undertake to review and analyze the evidence, which is very voluminous. It is enough to say, that we have given it careful consideration, and agree with the Appellate and circuit courts in their findings of fact. There is much of the evidence that is irrelevant, but it will be presumed, in the absence of anything showing to the contrary, that the master and the court below acted only upon such as was properly admissible under the issues.

The evidence is amply sufficient to show the formation of a partnership between the parties for the purchase of coal lands, and to develop the same with a view to profit. It is probably true that Allison expected that the Royal lands, or as much as he might acquire good title to, would be taken in as assets of the firm, at $55 per acre, and he credited therewith, and it was doubtless in view of this expectation that he entered into the partnership. The title to the Booth land was, by mutual consent, taken in the names of Perry and Hathaway, to be held in trust for the firm, and it was so treated by all the parties. Upon the first payment of $5000 made to Booth by Perry and Hathaway, Allison gave his note to them for his one-third part thereof, and when, in March, 1882, the second payment of $10,000 was made, he likewise made his note to Perry and Hathaway for one-third of that sum. On the 9th of January, 1883, Allison obtained a renewal of these notes, and gave to Perry and Hathaway his note for $5000, payable in six months, for the principal sum, and also his other note for $301.31, being for accrued interest on his former note, due one day after date.

There can be no question that Allison was an equal partner with Perry and Hathaway in the Booth lands. The principal point of contention, however, is, whether the Royal lands, held by Allison, or any part thereof, were to be taken in as assets of the firm. Allison testifies that they were; Perry is equally positive that they were not. He claims that he had no authority from Hathaway to make any agreement to purchase the Royal lands, and so informed Allison. If the agreement was as Allison contends, his giving his notes could only be accounted for upon the theory that he was to clear the title of record to the Royal lands. This, it is apparent, was done before the execution of the notes given in renewal, as before mentioned. It will be seen that Allison claims that the title to the Royal lands was clear before January 9, 1883. On that day he wrote a letter to Perry, in which he transmitted said renewal notes, which is as follows:

"Mr. I. N. PERRY, *Cashier, Rochelle, Ill.:*

"*Dear Sir*—You will find note signed by me, $5000, and one for $301.31 int. one (1) day. We have had some hard luck with our R. R. work, and compelled to pay several thousand that we did not expect to, is why I don't send draft for this interest. I hope you and Mr. Hathaway will take in our Royal land, and if you will, it would help me out, and I am sure it is as good coal land as any of it, and as well, as some small pieces of the Royal land is surrounded by the Booth land, and all is close enough, and will not lessen the value of the Booth land; then if you could fix it so I could only own one-fourth or one-sixth, I could get along with it. Please consider this."

Shortly afterward, May 30, 1883, he again wrote, directing to "Messrs. Perry & Hathaway," as follows:

"*Gents:*—I wish you would do one of two things for me: either take my Royal lands, or let me out as a partner with you on the Booth land. I am not in shape to pay my part

unless you take in my land, and to pay interest will only make it worse for me. If there was no coal there I should not have asked you men to do either. Think of this, and let me know.

Truly yours, JOHN ALLISON."

If any doubts had before existed in respect of the partnership, or as to whether or not Perry and Hathaway had agreed to take the Royal land of Allison into the partnership assets, they must be dissipated by these letters. If such a contract had in fact existed, it seems incredible that these letters should have been written. It is true that Allison testifies that he was induced to write them by Perry, with a view of hastening action on the part of Hathaway; but in this he is flatly contradicted by Perry, and would seem to lack corroboration from any other source. We are of opinion that the trial court was justified in its finding, and that no error has intervened in the affirmance thereof by the Appellate Court.

It is also assigned for error that the court erred in excluding the second deposition of Allison, taken after the filing of the master's report. This deposition was not competent upon the hearing of exceptions to the master's report. *Cox* v. *Pierce,* 120 Ill. 556.

Some ten months after Perry's examination before the master, appellant moved the court to require Perry to produce before the master certain letters he had received from appellant, based on affidavit that the same had been written by Allison and mailed to Perry, that each of said letters contained material and relevant matter, etc., and that Allison had no copies thereof, which motion was denied. This ruling is assigned for error. If such letters were admissible in evidence, Perry should have been given notice to produce them, and upon his refusal so to do, secondary evidence of their contents would have been admissible.

The master, in allowing Allison seven per cent interest on the sums paid out by him, did not err. In this he was justi-

fied by the proofs and the averments of the bill and answer. The allowance of the personal expenses of Perry and Hathaway in looking after the firm business was fully justified by the evidence.

It is also urged that the decree does not provide for the collection of notes due the firm for rents, one for $500, due October 1, 1885, and one for a like sum due January 1, 1886. The rent collected was reported up to December 6, 1886, only, and these notes were not then collected. The decree approves the report of the master, provides for the collection of these notes, and the rents subsequently accruing, for the benefit of the firm, and requires the master to make report thereof. In this there was no error.

The law does not require that the agreement of co-partnership shall be in writing, to enable the firm to purchase lands. Where a partnership is constituted under a parol agreement, it may be shown that its property consists of land, and it may own, possess and enjoy the same. By consent of all the parties here, the title to the Booth land was conveyed to Perry and Hathaway, and was in fact held in trust for the firm, and the Statute of Frauds can not be invoked by Allison to defeat a recovery on the notes given by him to his partners for his share of the purchase price of the land. *Wallace* v. *Carpenter,* 85 Ill. 590 ; *York* v. *Clunans,* 41 Iowa, 95.

We find no substantial error, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*