## Frankenstein et al. v. North et al.

1. RESULTING TRUSTS—*Where They Arise by Operation of Law.*— Where individuals purchase land as partners on speculation, the profits to be divided between them, and the title is taken in the name of one of the partners, who afterward claims to be sole owner, a resulting trust arises out of the transaction in favor of the other partners by operation of law.

2. TRUSTS—*Declaration of, When Unnecessary.*—Where a transaction is such that the law will imply a trust from it, a declaration in a written instrument creating the trust is unnecessary.

3. PARTNERSHIP—*To Deal in Real Estate—Statute of Frauds.*—An agreement for a partnership for the purpose of dealing in lands for a profit, is not within the statute of frauds.

4. SAME—*Dealing in Real Estate—Interest May be Shown by Parol.*

—The fact of the existence of a partnership for the purpose of dealing in real estate, and the extent of each partner's interest in the real estate owned by it, may be shown by parol.

5. INJUNCTIONS—*Attempted Transfer by a Partner of Real Estate Held by Him for the Firm.*—Where one member of a partnership, holding the title of real estate belonging to the firm, attempts to convey it in satisfaction of his individual indebtedness, a court of equity will, on proper application, restrain him from doing so.

**Bill in Aid of Execution.**—Trial in the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Hearing and decree for defendants. Appeal by complainants. Heard in this court at the March term, 1898. Affirmed. Opinion filed January 26, 1899.

### STATEMENT.

Each of the appellants, I. Frankenstein, John Sprich and E. E. Foster, commenced suit by attachment August 28, 1896, in the Superior Court of Cook County, against the appellees, Charles A. North and Louis D. Taylor. There was no personal service, but the writs of attachment were levied on certain lots in a subdivision known as the South Addition to Harlem, in Cook County, Illinois.

September 29, 1896, Frankenstein recovered judgment for $916.12 and costs, and Sprich for $800 and costs, and October 2, 1896, Foster recovered judgment for $677 and costs. In each case a special execution was awarded against the property levied on. January 12, 1896, appellants filed a bill against Charles A. North, Harriet L. North, his wife, Alfred E. Barr and his wife, Mrs. Alfred E. Barr, alleging certain conveyances from North and wife to Barr and from Barr and wife to North, of the property, or some part thereof, levied on, were fraudulent, and praying that the same should be set aside in aid of the executions above mentioned. North, Barr, and their wives, answered the bill, denying all fraud therein alleged; a replication was filed, and the cause was referred to the master to take proof and report his conclusions of law and fact. The master reported adversely to the complainants, and recommended the dismissal of the bill, and on the hearing of exceptions to the report, the exceptions were overruled, the report con-

firmed and the bill dismissed.    The facts in regard to the premises in question are substantially as follows:

Prior to June 27, 1889, Andrew Rehm, John C. Schumacher, Louis J. Fuellgraff, Frederick Pegel, George Lang, Philip Lehmann, Jacob Portz, Edward F. Comstock, James F. Gubbins, Julia S. Conkey and William C. Scott, verbally agreed to purchase real estate, subdivide the same, sell the lots, and divide the proceeds in the proportion invested by each in the purchase.    In pursuance of this agreement, June 27, 1889, they purchased and procured a conveyance from Addison M. Holton to Andrew Rehm, John C. Schumacher and Louis J. Fuellgraff, of the east half of the east half of the southeast quarter of Section 13, Town. 39 N., R. 12, east of the third principal meridian, except the north two rods thereof, in Cook county, Illinois.    The consideration for the conveyance was $40,000; $18,000 in cash and the assumption by the grantees of an incumbrance by trust deed of the property, to secure the payment of $22,000, evidenced by a promissory note.    April 30, 1890, North purchased from Gubbins $1,000 worth of his interest.

Those interested in the purchase called themselves the " Oak Park Land Syndicate."    Rehm, Schumacher and Fuellgraff, to whom the conveyance was made by Holton, executed a declaration of trust June 27, 1889, the date of the conveyance to them.    The declaration first recites the conveyance to them by Holton, that the premises were purchased by them and the other persons heretofore named, in pursuance of the agreement mentioned, and that the sum of $15,750 was contributed toward said purchase by them, as follows:

" Louis J. A. Fuellgraff, $2,500; John C. Schumacher, $2,600; Andrew Rehm, $2,500; Frederick Pegel, $1,000; George Lang, $1,000; Philip Lehmann, $1,000; Jacob Portz, $500; Edward F. Comstock, $150; James F. Gubbins, $2,500, J. S. Conkey, $1,000; William C. Scott, $1,000; the money for the remainder of said cash payment having been borrowed from the International Bank on the credit of private parties, to be repaid by said trustees."

It then proceeds to declare that the property is held by

them in trust for the joint adventure, with certain powers which are stated, in substance, to be to manage, subdivide and improve the property, sell the same, and, after paying the incumbrance and other expenses, to distribute the net proceeds among the above named persons in proportion to the amounts contributed by them, respectively. The instrument contains this clause:

"And it is further declared by all the parties hereto that the interest of the contributors to the common enterprise is a personal interest, to be accounted for in money, and not in land, when the property shall be sold and the avails thereof realized, and that the whole title to said premises as land, both legal and equitable, is in said trustees as such, and that this instrument is executed at the same time, and is to be considered a part of the same transaction as said deed to said trustees first herein mentioned."

The declaration of trust was signed by all of the above named persons, who contributed toward the purchase.

After the execution of the deed from Holton to Rehm and his co-trustees, and after the property had been subdivided by the trustees, difficulties were encountered in selling the lots, some of the parties originally interested having parted with their interest, and it being difficult, therefore, to procure their signatures when required by purchasers, and objections being made by attorneys of purchasers, on the ground that the title was in trustees. To obviate these difficulties, it was determined, at a meeting of those interested, to procure a conveyance from the trustees to John G. Lobstein, so that he might convey the lots when sold. Accordingly, November 12, 1890, Rehm, Schumacher and Fuellgraff, the trustees, together with all others interested in the premises, and the wives of those of them who were married, conveyed the premises to John G. Lobstein. It was ordered at the meeting of the syndicate that Lobstein should "give title back to Alfred Barr and make a statement so as to protect its stockholders," but it does not appear that the order, in this respect, was complied with. After the execution of the deed to Lobstein, he signed contracts and deeds for lots sold, while the title remained in him.

In November, 1895, Schumacher, Lobstein, who, in the meantime had acquired an interest, Lang, Lehmann and Pegel, expressed a desire to withdraw from the "Oak Park Land Syndicate," and to have lands of the syndicate proportionate to their interest conveyed to them. At a meeting of the syndicate, this was agreed to; the premises were divided by an imaginary line, from west to east, through the center, and the part north of this line was conveyed to the retiring members of the syndicate above named, the legal title to the south part remaining in Lobstein, the equitable owners of which were Barr, Mrs. Fuellgraff, whose husband died in 1892, Conkey, Robbins and North. It is the southern portion, or such part thereof levied on by virtue of the writs of attachment, that is involved in this cause. The equitable owners of the southern part of the premises above named met, and the minutes of this meeting show that they formed a new organization under the name "Harlem Land Syndicate," and elected Mrs. Fuellgraff president, Charles A. North treasurer, and Alfred E. Barr secretary and general manager, and ordered that title should be vested in North to all lands in the "Harlem Land Syndicate," and that North should execute a deed to Barr, the latter deed to be deposited with Mrs. Fuellgraff, but not to be recorded. In pursuance of this order John G. Lobstein, October 26, 1895, executed two deeds to Charles A. North, one for all lots unsold, and the other for all lots in respect to which there were contracts of sale, in the south half of the subdivision. North and wife, by deeds dated, respectively, November 7th and 23d, 1895, conveyed the property to Alfred E. Barr. These deeds were acknowledged but not recorded, and were not delivered to Barr until December 17, 1896. July 15, 1896, North executed to Alfred E. Barr a deed of the property, which was recorded the same day. This deed in its commencement, purports to be from North and Harriett L., his wife, but is not signed by Mrs. North. Harriett L. North executed to Barr a deed of the same property, of date July 15, 1896, which was acknowledged August 20, 1896, and filed for record August 25, 1896.

It is admitted that the property conveyed by North and wife to Barr is worth at least $10,000. The property in question was vacant and unoccupied. North and Taylor were partners in the banking business, and the complainants were depositors in their bank. The complainants, respectively, testified as follows to balances due them from North and Taylor's bank at the dates mentioned: Frankenstein, December 28, 1895, $952; April 3, 1896, $936.67; May 26, 1896, $933.67; July 15, 1896, $970.72; John Sprich, July 15, 1896, not less than $1,000; this witness testified that he had been a depositor in the bank since 1894; E. E. Foster, July 15, 1896, $760.49.

No consideration was paid by Lobstein, North or Barr for the deeds to them, or any of them, heretofore mentioned. There was no express declaration of trust by Lobstein or North, or by any one except Holton's immediate grantees. North and Taylor, being indebted to the firm of Kerr & Barr, of which firm Alfred E. Barr was a member, in the sum of $1,463.20, Charles A. North, August 15, 1896, by written instrument of that date, transferred and assigned to Alfred E. Barr, for the benefit of the firm of Kerr & Barr, all his right, title and interest in the property or the proceeds arising from the sale thereof, "in the possession of a syndicate known as the Harlem Land Syndicate, the property owned by said syndicate being located in South Harlem, a subdivision of the southeast quarter of section 13, township 39 north, range 12, east of the third principal meridian, in Cook county, Illinois," etc.

It appears from the evidence that in 1896, apparently in August, after the assignment to Barr, North and Taylor failed in the banking business, and that a receiver was appointed. The master finds, among other things, that the Equitable Trust Company was appointed receiver for the estate of North and Taylor and qualified as such, and that Barr assigned and set over to the receiver the residue of North's interest in said syndicate, subject to the claim of Kerr & Barr under the assignment from North. Appellants' counsel say in their brief, " There is no controversy as to

the facts," and the master found the facts substantially as above stated.

WILLIAMS, KRAFT & RUST and FRANK L. SHEPARD, attorneys for appellants.

' KERR & BARR, attorneys for appellees.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellants' counsel attack the decree on the following several grounds:   That the premises in question are not to be regarded as personalty, as between complainants and the equitable owners thereof, the members of the Harlem Land Syndicate; that there was no express trust manifested by writing, as required by section 9 of chapter 59 of the statute of frauds, and no resulting trust in favor of the equitable owners, and that the conveyance of July 15, 1896, by North to Barr, was fraudulent as to complainants.   It may be conceded that the declaration of trust executed by Andrew Rehm and others, the grantees of Addison M. Holton, June 27, 1889, was rendered of no effect by the conveyance from those grantees to John G. Lobstein, and that there was not thereafter any written declaration of trust, within the meaning of section 9 of the statute of frauds. Whether there was a resulting trust in favor of the members of the syndicate, who were partners in the venture, while the legal title was held by Lobstein and North, respectively, is a question of law.   In Wallace v. Carpenter, 85 Ill. 590, Carpenter, Wallace and two other persons, purchased a tract of land on speculation, each to pay one-quarter of the expenses of the purchase, and to have one-quarter of the land or the proceeds thereof.   For convenience in selling, the contract was taken in the name of Carpenter, and it was agreed that the deed should also be taken in his name.   A part of the first installment of the purchase money was paid by Carpenter for himself and his partners in the venture.   Carpenter, before a conveyance was made in pursuance of the

contract, sold the land at a profit of $4,800, and refused to account with Wallace for his share of the profits. It was contended that the contract between the partners was void under the statute of frauds, but the court decided the contrary, holding as to Wallace that "A resulting trust in his favor grew, by operation of law, out of the transaction, which entitled him to one-quarter of all the benefits growing out of that payment. The benefits which did grow out of that payment were the profits of $4,800."

In Speyer v. Desjardins, 144 Ill. 641, which was an appeal from a decree sustaining a demurrer to, and dismissing appellant's bill, it appeared from the bill that Speyer and Desjardins had purchased as partners, land on speculation, the profits to be equally divided, and that the title was taken in the name of Desjardins, who claimed to be the sole owner. The court reversed the decree, holding, among other things, that "an agreement for a partnership for the purpose of dealing and trading in lands for profit is not within the statute, and that the fact of the existence of the partnership and the extent of each party's interest may also be shown by parol, is now quite generally accepted as the established doctrine," citing numerous cases. The court further held that a resulting trust in favor of Speyer to the extent of his interest arose by operation of law. See also Towle v. Wadsworth, 147 Ill. 80, 96; Allison v. Perry, 130 Id. 9; Perry on Trusts, 4th Ed., Sec. 132.

In Phillips v. North et al., 77 Ill. 243, which was a creditor's bill in aid of an execution, it appeared that North, the judgment debtor, some months before the judgment was rendered, was the legal owner of certain lots which he conveyed to A. in exchange for another lot, and that A. conveyed the latter lot to North's wife. But it further appeared that Mrs. North was the equitable owner of the first mentioned lots, that they were paid for with her money and that they were first conveyed to North, but subsequently were sold and conveyed by North and wife to another person, who, in part consideration for such conveyance to him, conveyed to Mrs. North the lot in controversy.

The court held that the conveyance was not fraudulent as to the complaining creditor, saying :

" It abundantly appears from the sworn and uncontradicted answers of the defendants that the property given in exchange for the lot in controversy was owned by Mrs. North, paid for by money derived from a source other than her husband. If this be true, and it is not controverted, then in equity she was the undoubted owner of this lot, and the unauthorized conveyance to her husband rendered him, in equity, her trustee, which would have, on a proper application, compelled him to convey to her; and, holding in trust for her, he had the legal right to reconvey to Allen and have him transfer the legal title to Mrs. North, and thus unite the legal and equitable title where it belonged."

In view of these authorities, we are of opinion that there was a trust in favor of the persons composing the syndicate, and who were partners in the venture, to the extent of their respective interest, when the property was conveyed to Lobstein, and that the trust followed the property when it was conveyed by Lobstein to North, in favor of the new or " Harlem Land Syndicate," of which North was a member, and that had North claimed to be the sole owner of the property, to the exclusion of his partners in the venture, and attempted to appropriate it to his own use, as, for instance, by conveying it to complainants in satisfaction of the indebtedness to them of North and Taylor, a court of equity, on proper application, would have restrained him from so doing.

Whether the trust with which the premises were charged, in favor of the partnership, while North held the title, was, or not, a resulting trust, in the strict sense in which those words are used in text-books and adjudged cases, matters not; it was a trust which the law would imply from the circumstances in evidence, and being such, it was not necessary, under the statute, that it should be manifested by a written instrument.

The deed from North to Barr was executed and recorded July 16, 1896, and the deed from Mrs. North to Barr, of date July 16, 1896, was recorded August 25, 1896. The

attachment suits were not commenced until August 28, 1896.

Assuming the validity of the assignment of North's personal interest to Barr, the record shows that the interest of each of the members of the " Harlem Land Syndicate " in the southern part of the subdivision, including the premises conveyed to North and by him and his wife to Barr, was in proportion to the investments made by them, as follows :

Agnes Fuellgraff, $3,500; C. A. Conkey, $1,000; George A. Robbins, $1,000; Alfred E. Barr, $3,500; in all $9,000, North having only one-ninth interest, and his co-partners eight-ninths. It does not appear from the evidence that complainants, or any of them, in fact, gave credit to North and Taylor on the faith of the ownership of North of the premises in question, or even that they knew that the legal title was in North until about the time of the commencement of the attachment suits. North was not in possession of the premises. The evidence shows they were vacant and unoccupied. The conveyance was made by Lobstein to North October 26, 1895, and was recorded November 9, 1895. Frankenstein testified to a balance due him from the bank December 26, 1895, of $952, and Sprich that he had been depositing in the bank since 1894. Foster failed to testify how long he had been a depositor. When the deposits included in the balances testified to were made does not appear. Appellants' counsel now claim the right to subject the premises, of at least the value of $10,000, in which North had originally only one-ninth interest, which he assigned to Barr, to the payment of judgments amounting to $2,393.12, exclusive of costs, to the exclusion of the equitable rights of Barr and his co-partners in the venture, insisting that the complainants have the superior equity, and this notwithstanding the legal title was vested in Barr prior to the commencement of the attachment suits; and there is no evidence of actual fraud in any of the conveyances. In this view we can not concur.

The assignment by North to Barr of date August 15, 1896, before the attachment suits were commenced, divested

North of all beneficial interest in the premises in question. That North and Taylor were indebted to Kerr and Barr, for whose use the assignment was made, in an amount in excess of North's investment in the premises, is not controverted, and that a debtor in failing circumstances may, in good faith, prefer a creditor, is incontrovertible. Tomlinson v. Matthews, 98 Ill. 178, and cases there cited.

As between North and Barr, who were partners in the venture, North's interest, he and Barr being partners, could pass as personalty. Speyer v. Desjardins et al., 144 Ill. 641.

At the time the attachment writs were levied North had no interest, legal or equitable, in the premises levied on.

The decree will be affirmed.